UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Stanley Oduro-Amoako,

        Plaintiff,

v.

Delta Air Lines, Inc.,

        Defendant.

File No. 23-cv-3400 (ECT/JFD)

**OPINION AND ORDER**

---

Stanley Oduro-Amoako, *pro se*.

Ben D. Kappelman and Briana Al Taqatqa, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant Delta Air Lines, Inc.

---

Stanley Oduro-Amoako worked for Delta Air Lines for over ten years, until his termination on June 17, 2022. While there, he claims, he was subjected to comments about his race, national origin, sex, sexual orientation, and disability, and faced discipline as pretext for his discriminatory termination. Mr. Oduro-Amoako brought a *pro se*, five-count Complaint against Delta for violations of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, and the Minnesota Human Rights Act ("MHRA") based on the alleged discrimination, termination, and hostile work environment.

Delta seeks dismissal of Mr. Oduro-Amoako's Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted. Mr. Oduro-Amoako has failed to exhaust his administrative remedies with respect to his hostile-work-environment and national-origin-discrimination claims, and he fails to plausibly allege discrimination under

the ADA and Title VII.  Those claims will be dismissed, and supplemental jurisdiction will not be exercised over the remaining MHRA claims.

I[1]

Stanley Oduro-Amoako worked for Delta from April 2012 to June 2022, most recently as a Customer Experience Specialist at its Minneapolis-St. Paul location.  Compl. [ECF No. 1] ¶¶ 10–12.  Mr. Oduro-Amoako is a Black, West African, heterosexual male. *Id.* ¶¶ 14, 19.  During his time at Delta, Mr. Oduro-Amoako was a chairman of the Diversity and Inclusion Council and participated in Delta's Equal Group, both of which advocate for the LGBTQ community.  *Id.* ¶ 21.  Delta is a corporation with operations in Minnesota.  *Id.* ¶ 8.

Mr. Oduro-Amoako alleges he experienced "racial remarks and discriminatory behavior" from a Customer Experience Manager, including "racially insensitive micro-aggressions and derogatory comments based on his race, national origin, and sexual orientation for championing the LGBTQ cause for inclusivity."  *Id.* ¶¶ 25, 30.

---

[1]     In accordance with the standards governing a motion to dismiss under Rule 12(b)(6), the facts are drawn from the complaint and documents embraced by it.  *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).  Defendant's Exhibit A [ECF No. 12-1] and Plaintiff's Exhibits A through D [ECF No. 19-1] are either public records or documents embraced by the pleadings whose authenticity is not questioned, and may be considered. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (explaining courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" in resolving a 12(b)(6) motion) (citation omitted); *see also* Def.'s Reply Mem. [ECF No. 20] at 6–7 (Delta does not object to Plaintiff's Exhibits A–D).   But Exhibit E [ECF No. 19-2], Mr. Oduro-Amoako's personnel file, does not fall under any *Zean* category and will not be considered at this stage.

Mr. Oduro-Amoako describes two such incidents.  On February 27, 2022, the manager asked Mr. Oduro-Amoako "'if all black people do not know how to swim' and if them 'not being able to swim was related to the color of their skin.'"  *Id.* ¶ 30.  And on June 3, 2022, the same manager "questioned the origin of [his] last name and then stated that West Africans were involved in a lot of scams" and made "veiled comments about [Mr. Oduro-Amoako's] involvement and affiliation with Delta's BRG Equal LGBT group."  *Id.* ¶¶ 26, 30.  Mr. Oduro-Amoako does not otherwise describe the content of the "veiled comments."  *See id.*

Mr. Oduro-Amoako also "suffer[s] from [an] adjustment disorder with severe anxiety and depression that manifested into excruciating physical stomach pains."  *Id.* ¶ 17. He describes several instances in which the disorder affected his work. Mr. Oduro-Amoako was approved for short-term disability leave between December 30, 2020, and January 31, 2021, though he returned to work on January 14, 2021.[2]  *Id.* ¶ 23; *see also* Pl.'s Ex. C [ECF No. 19-1].  On June 3, 2022, while in a meeting with management, Mr. Oduro-Amoako experienced "sharp pains in his stomach" such that he "showed visible signs of physical and mental distress relating to his medical condition during the meeting, grabbing his stomach and doubling over in excruciating pain."  Compl. ¶ 25.  On June 13, 2022, Mr. Oduro-Amoako requested additional bathroom breaks because of the side effects from the medication he was taking for his disorder.  *Id.* ¶ 24; *see* Pl.'s Ex. D.

---

[2]     Mr. Oduro-Amoako states he returned to work on January 14, *2022*, Compl. ¶ 23, but this appears to be a mistake.

In his final few years with Delta, Mr. Oduro-Amoako was disciplined several times. On October 20, 2021, Mr. Oduro-Amoako was "issued Formal Verbal Coaching for alleged violation of Delta's policies relating to self-ticketing for use of the system for himself, family members or friends." *Id.* ¶ 31. He claims similarly situated employees were "not disciplined for such use of the system and violation of the Delta policy." *Id.* On February 12, 2022, Mr. Oduro-Amoako was "issued Informal Verbal Coaching for . . . issues with proficiency." *Id.* ¶ 32. On May 19, 2022, he was issued a "Performance Discussion for alleged unaccounted for downtime between February 2022 and April 2022." *Id.* ¶ 33. Mr. Oduro-Amoako claims the issues for which he was disciplined actually stemmed from Delta's "flawed computer system" and "time tracking system errors," which caused him to be "unjustly accused" of deficient performance. *Id.* ¶¶ 13–16.

On June 3, 2022, Mr. Oduro-Amoako was suspended for "'work avoidance' related to alleged abuse of time and high internal call wait times." *Id.* ¶ 11. Following his suspension, Mr. Oduro-Amoako was "escorted from the Delta property with several police cars facing toward his vehicle parked in the parking lot." *Id.* ¶ 27. He claims that "during [his] 10-year tenure with Delta no other similarly-situated non-Black, non-West African, non-disabled male employee have [sic] ever been confronted with police intervention without just cause." *Id.* ¶ 28. Delta terminated Mr. Oduro-Amoako's employment on June 17, 2022. *Id.* ¶ 12.

On April 6, 2023, Mr. Oduro-Amoako filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging Delta discriminated against him. *Id.* ¶ 4; Def.'s Ex. A. In the charge, Mr. Oduro-Amoako listed both the earliest

and the latest dates of discrimination as June 17, 2022—the date of his termination—and alleged discrimination based on disability, race, sex, sexual orientation, and retaliation. Def.'s Ex. A.  The narrative section of the charge reads in full:

> I.  I was hired by the respondent in April 2012.  My latest position was Customer Experience Specialist.  The respondent was aware of my disability, my sexual orientation and my participation in protected activity.  In June 2022, I was discharged.
>
> II.  I believe I was discriminated against based on my race/Black, sex, sexual orientation, disability and retaliation for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended.

*Id.*  The EEOC issued a letter on August 7, 2023, informing Mr. Oduro-Amoako of his right to sue.  Compl. ¶ 6; *see* Pl.'s Ex. B.

Mr. Oduro-Amoako commenced this action *pro se* by filing a five-count Complaint on November 3, 2023.  *See* Compl. at 7.  He contends that Delta's claim of work avoidance was pretext for discipline and termination based on his race, national origin, sex, and disability, and as such, he was subjected to disparate treatment.  He brings claims for (1) disability discrimination in violation of the ADA, *id.* at 4, ¶¶ 25–33;[3] (2) sex and sexual-orientation discrimination in violation of Title VII, *id.* ¶¶ 34–42; (3) race and national-origin discrimination in violation of Title VII, *id.* ¶¶ 43–50; (4) hostile work environment in violation of Title VII, *id.* ¶¶ 51–59; and (5) disparate treatment in violation of Title VII and the ADA, *id.* ¶¶ 60–67.  Each count is also brought under the MHRA.  *See*

---

[3]     The Complaint's paragraph numbering restarts on page 4, after ¶ 33.

*id.* ¶¶ 33, 42, 50, 59, and Count Five's heading.  Mr. Oduro-Amoako seeks compensatory and punitive damages, as well as injunctive relief, costs, and Equal Opportunity Employment training for Delta. *Id.* at 7 ¶¶ 1–10 (under "Prayer for Relief").  Delta moves to dismiss the Complaint, arguing Mr. Oduro-Amoako's national-origin-discrimination and hostile-work-environment claims are procedurally barred, and that he fails to state a claim for the remaining counts.  Def.'s Mem. in Supp. [ECF No. 11].

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792 (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

## III

### A

Begin with Delta's exhaustion argument.  In Counts Three and Four of his Complaint, Mr. Oduro-Amoako claims Delta discriminated against him based on his

national origin, and that he was subjected to a hostile work environment.  Compl. ¶¶ 43–59.  Delta argues Mr. Oduro-Amoako failed to exhaust his administrative remedies for these two claims, as required to bring a Title VII claim, and they must be dismissed.  Def.'s Mem. in Supp. at 11–16.[4]  Neither claim has been exhausted, and both will be dismissed.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To sue under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") that "give[s] notice of all claims of discrimination" that he intends to assert.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630–31 (8th Cir. 2000) (citation omitted).  A plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."  *Id.* at 631 (quoting *Nichols v. Am. Nat. Ins.*, 154 F.3d 875, 886–87 (8th Cir. 1998)).  "The key is that the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that 'could reasonably be expected to grow out of the charge' in the EEOC complaint."  *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 945 (8th Cir. 2021) (citation omitted).

The Eighth Circuit requires that "[e]ach incident of discrimination and each retaliatory adverse employment decision . . . be individually addressed before the EEOC"

---

[4]     Citations refer to a document's CM/ECF page numbers in the upper right-hand corner, not to the document's original pagination.

to be considered sufficiently related to a properly exhausted claim. *Id.* at 944 (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015)). When deciding whether a plaintiff has exhausted his administrative remedies, the Eighth Circuit "liberally construe[s]" the allegations in the EEOC charge—particularly when a plaintiff is *pro se*—but it recognizes "a difference between liberally reading a claim which lacks specificity, and inventing . . . a claim which simply was not made." *Sellers*, 791 F.3d at 943 (citation omitted); *see also Wedow v. City of Kansas City*, 442 F.3d 661, 672–73 (8th Cir. 2006) (explaining the Eighth Circuit has "considerably narrowed [its] view" over time of what it means for a plaintiff's claims to be "like or reasonably related to" those in the EEOC charge). For example, "retaliation claims are not reasonably related to underlying discrimination claims." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998). To preserve a claim for discrimination based on a particular characteristic, a plaintiff must typically mention that characteristic in the EEOC charge. *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011) (affirming the dismissal of age discrimination and retaliation claims as unexhausted when the plaintiff did not mention them in her EEOC charge).

Failure to exhaust administrative remedies "is an affirmative defense that defendants bear the burden to plead and prove." *Roiger v. Veterans Affs. Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019); *see also, e.g., Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989–90 (8th Cir. 2011) (addressing exhaustion at the summary judgment stage). Nonetheless, dismissal under Rule 12(b)(6) is appropriate if the plaintiff's EEOC charge shows that the plaintiff has not exhausted a

claim.  *See Brooks*, 655 F.3d at 801; *see also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851–52 (8th Cir. 2012); *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (explaining that courts may consider an EEOC charge at the pleading stage without converting a motion to dismiss into one for summary judgment).

In his EEOC charge, Mr. Oduro-Amoako alleged discrimination based on disability, race, sex, sexual orientation, and retaliation.  Def.'s Ex. A.  Mr. Oduro-Amoako concedes that his national-origin-discrimination claim has not been exhausted and agrees it should be dismissed.  Pl.'s Mem. in Opp'n [ECF No. 18] at 7.  Accordingly, the claim will be dismissed.

The hostile-work-environment claim is also unexhausted.  "[H]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct . . . .  Such claims are based on the cumulative effect of individual acts."  *Cottrill v. MFA, Inc.*, 443 F.3d 629, 635 (8th Cir. 2006) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  To successfully prove a hostile work environment, the work environment must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive."  *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)).  A plaintiff's allegations of discrimination based on a discrete event is "not broad enough to encompass hostile work environment claims."  *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002).

Mr. Oduro-Amoako does not allege a hostile work environment in his EEOC charge.  *See* Def.'s Ex. A.  Under the section titled "DATE(S) DISCRIMINATION TOOK

PLACE," Mr. Oduro-Amoako listed *both* the earliest *and* latest dates of discrimination as June 17, 2022—the date Delta terminated his employment. *See id.* A hostile work environment is built over time with "repeated" and "pervasive" conduct; a single date, even the date of termination, does not qualify as repeated and pervasive conduct. *See Cottrill*, 443 F.3d at 635. Further, Mr. Oduro-Amoako's charge does not allege any additional information that would lead one to suspect that Mr. Oduro-Amoako faced a hostile work environment, as he merely alleged that "[i]n June 2022, [he] was discharged" and that he "was discriminated against based on [his] race/Black, sex, sexual orientation, disability and retaliation for participating in protected activity." Def.'s Ex. A.

In *Dorsey v. Pinnacle Automation Co.*, the Eighth Circuit held that "[a]ppellants' claims for age discrimination based on the failure to promote presented in their charge of discrimination [were] not broad enough to encompass hostile work environment claims," as the choice not to promote them "was a discrete event completed at the time of the promotions" while a "claim of . . . harassment in the workplace focuses on the pervasiveness of the . . . discriminatory conduct." *Dorsey*, 278 F.3d at 838–39. Here, Mr. Oduro-Amoako's discrimination claims based on his termination alone are not broad enough to allege a hostile work environment. An EEOC investigation of a hostile work environment "could [not] reasonably be expected to grow out of the charge" in Mr. Oduro-Amoako's EEOC charge. *Weatherly*, 994 F.3d at 945; *see Dorsey*, 278 F.3d at 838–39. Accordingly, Mr. Oduro-Amoako's hostile-work-environment claim will be dismissed because it has not been properly exhausted.

B

1

Turn to Mr. Oduro-Amoako's ADA claim. In Count One, Mr. Oduro-Amoako claims Delta discriminated against him in violation of the ADA and MHRA when it terminated him after he requested additional bathroom breaks. Compl. at 4, ¶¶ 25–33. Delta argues that Mr. Oduro-Amoako has failed to allege a plausible claim of disability discrimination under the ADA because he has not plausibly alleged that he has a disability as defined by the ADA or that his disability was a motivating factor in the decision to terminate his employment. *See* Def.'s Mem. in Supp. at 21–25. Because Mr. Oduro-Amoako does not plausibly allege his disability was a motivating factor in the choice to terminate his employment, his ADA claim will be dismissed.

The ADA prohibits discrimination against individuals with disabilities in employment practices. 42 U.S.C. § 12112(a). To make out a discrimination claim under the ADA, "a plaintiff must plausibly allege that []he '(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability.'" *Tipcke v. Olmsted Med. Ctr.*, No. 22-cv-2470 (ADM/JFD), 2023 WL 2776098, at *5 (D. Minn. Apr. 4, 2023) (quoting *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013)). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). The term "substantially limits" is to be "construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i); *see also Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) ("Congress has instructed the courts to

11

determine whether a limitation is substantial in light of its command to interpret disability broadly." (quoting *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016))).

Mr. Oduro-Amoako plausibly alleges he is disabled within the meaning of the ADA because he pleads his impairment substantially limited one or more major life activities. 42 U.S.C. § 12102(1).  Mr. Oduro-Amoako claims his "adjustment disorder with severe anxiety and depression . . . manifested into excruciating physical stomach pains," that his impairment caused him to experience "sharp pains in his stomach," and that he "showed visible signs of physical and mental distress relating to his medical condition" by "grabbing his stomach and doubling over in excruciating pain."  Compl. ¶¶ 17, 25.  "[A] major life activity also includes the operation of a major bodily function" such as "digestive" and "bowel" functions, 42 U.S.C. § 12102(2)(B).  Moreover, Mr. Oduro-Amoako pleads facts showing Delta granted his request for short-term disability leave.  Compl. ¶ 23.  At this stage, and broadly construing the term "substantially limits" in favor of expansive coverage, *Rinehart*, 964 F.3d at 688, Mr. Oduro-Amoako has sufficiently alleged he is disabled.

But even if Mr. Oduro-Amoako meets the disability prong, his ADA claim fails because he does not plausibly allege facts showing he "has suffered an adverse employment action because of [his] disability."  *Tipcke*, 2023 WL 2776098, at *5 (quoting *Hill*, 737 F.3d at 1216).  "An employee is entitled to some relief if he or she proves that his or her disability was a 'motivating factor' in the decision made, 'even though other factors also motivated' the employer's decision."  *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301

(8th Cir. 1995) (quoting 42 U.S.C. § 2000e-2(m)).[5]  Evidence of disparate treatment, in which a plaintiff demonstrates that he was "treated less favorably than similarly situated employees who are not in plaintiff's protected class" is often used to show this causal connection.  *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000) (citation omitted).  But evidence of disparate treatment is not the only way to show an inference of discrimination.  *Id.*  "[A]ny credible evidence tending to establish that an employer acted adversely to an individual 'on account of' his disability will suffice."  *Id.* (quoting *Greer v. Emerson Elec. Co.*, 185 F.3d 917, 922 (8th Cir. 1999)).  For example, temporal proximity can establish causation, but there must be a relatively short time period between when the employer learned of the employee's disability and when the adverse employment action was taken.  *See E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969–70 (8th Cir. 2014).

---

[5]      Under Title VII, "an unlawful employment practice is established" when a plaintiff establishes that his or her membership in a protected group "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).  The Eighth Circuit has applied the same "motivating factor" standard to ADA discrimination claims.  *See Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 991 (8th Cir. 2007).  However, in *Gross v. FBL Fin. Servs., Inc.*, the United States Supreme Court declined to apply the burden-shifting framework to claims brought under the Age Discrimination in Employment Act ("ADEA") and interpreted "because of" in the ADEA to require a plaintiff "to establish that age was the 'but-for' cause of the employer's adverse action."  557 U.S. 167, 173–78 (2009).  The Eighth Circuit subsequently questioned whether the "motivating-factor" standard continues to apply to ADA discrimination claims in light of *Gross* or whether the use of "because of" in the ADA also implicates the more rigorous "but-for" standard.  *Pulczinksi v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012).  But the Eighth Circuit has since applied a mixed-motive standard to an ADA discrimination claim in the same decision in which it applied a "but-for" standard to an ADA retaliation claim.  *Oehmke*, 844 F.3d at 755–59.

Mr. Oduro-Amoako argues that there is sufficient temporal proximity—between when he returned from his disability leave in January 2021 and when he was subjected to coaching in October 2021—to plausibly show that Delta's actions in expressing concern about his performance and his later termination were the result of disability discrimination. Pl.'s Mem. in Opp'n at 21. However, the clock on temporal proximity began to run when Delta learned of Mr. Oduro-Amoako's disability. *Mell v. Minn. State Agric. Soc'y*, 557 F. Supp. 3d 902, 921 (D. Minn. 2021) (citing *Prod. Fabricators*, 763 F.3d at 969–70). This was no later than December 30, 2020, when Mr. Oduro-Amoako's short-term disability leave began. Compl. ¶ 23. Even assuming the clock stopped when Mr. Oduro-Amoako first underwent coaching[6]—on October 20, 2021—rather than when the adverse employment action (termination) took place—on June 17, 2022—there are still nine months between when Delta became aware of his disability and when the alleged discriminatory action began. *See* Compl. ¶¶ 12, 31. That is too long to plausibly establish causation. *See Mell*, 557 F. Supp. 3d at 921–22 (D. Minn. 2021) (finding a six-month gap

---

[6]    It appears that Mr. Oduro-Amoako alleges that the coaching itself was an adverse employment action to which he was subjected on the basis of his disability, race, national origin, and sex. *See* Compl. ¶ 32. However, because employment termination was the only adverse employment action alleged in his EEOC charge, and because the coaching occurred outside of the June 17, 2022, date—the only date on which the alleged discrimination occurred in his charge—such a claim is unexhausted. Ex. A; *see Dyer v. R.R. Donnelley & Sons Co.*, No. 20-cv-2342 (PAM/JFD), 2021 WL 5644332, at *4 (D. Minn. Dec. 1, 2021) ("To the extent [plaintiff] asserts claims from time periods other than those listed in her two administrative charges . . . those claims are unexhausted."). Therefore, for purposes of analyzing Mr. Oduro-Amoako's claims, the coaching will be considered to the extent it supports his claim of discrimination but will not itself be evaluated as an instance of adverse employment action.

between when the employer learned of the employee's disability and her demotion did not plausibly show the adverse employment action was motivated by the disability).

In further support of his claim, Mr. Oduro-Amoako broadly alleges that "[s]imilarly-situated employees of different races, national origins, non-disabled, and sex were treated more favorably, when they were not coached and or terminate [sic] for similar proficiency issues."  Compl. ¶ 32.  He also alleges that throughout his ten years at Delta, "no other similarly-situated non-Black, non-West African, non-disabled male employee have [sic] ever been confronted with police intervention without just cause."  *Id.* ¶ 28.  And that he was "subjected to disparate treatment based on his race, national origin, sex and disability when he was issued Formal Verbal Coaching for alleged violation [sic] of Delta's policies relating to self-ticketing for the use of the system for himself, family members or friends," when similarly situated employees were not.  *Id.* ¶ 31.  Each claim distills down to the same core allegation: Mr. Oduro-Amoako was treated less favorably than other similarly situated employees of different races or national origins, who were not disabled and were not male.

While evidence of disparate treatment may establish that a complainant's disability was a motivating factor in the decision to terminate his employment, Mr. Oduro-Amoako has not provided more than mere conclusory allegations of disparate treatment, which a court need not accept.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see Moore v. Robert Half Int'l Inc.*, No. 23-cv-906 (JRT/ECW), 2023 WL 5960361, at *4 (D. Minn. Sept. 13, 2023) ("[Plaintiff] has not actually alleged any specific facts that plausibly suggest people who are male or not black received favorable treatment.  She

merely offers conclusory allegations, which the Court need not accept." (citation omitted));
*Robinson v. VSI Constr., Inc.*, No. 19-cv-1628 (DSD/BRT), 2019 WL 6715186, at *3
(D. Minn. Dec. 10, 2019) ("[Plaintiff] must present more than a speculative theory that
racial bias motivated [defendant's] actions to survive a motion to dismiss."), *aff'd*, 829 F.
App'x 741 (8th Cir. 2020).

In *Moore v. Robert Half International*, the plaintiff alleged that she had been
subjected to, among other things, sex and race discrimination when she applied for several
positions with the defendant company and was not hired. *Moore*, 2023 WL 5960361, at
*1. She claimed the company had a "history of employing only White Americans
Female/and or males." *Id.* at *4. The *Moore* court found the allegation did not rise above
the level of a mere conclusion, and need not be accepted. *Id.* As in *Moore*,
Mr. Oduro-Amoako has provided nothing more than conclusory allegations supporting a
speculative theory that disability discrimination was the true motivation behind Delta's
decision to terminate his employment. He has made broad claims that other, non-disabled
employees of different races, national origins, and sexes were "similarly situated" and were
not subjected to coaching, a police escort, and employment termination. Compl. ¶¶ 28, 31,
32. But he has not specified how those employees were similarly situated. Nor has he
provided any examples of such employees. His broad allegations are nothing more than
"legal conclusion[s] couched as . . . factual allegation[s]," which the court need not accept.
*Iqbal*, 556 U.S. at 678 (citation omitted).

What's more, Mr. Oduro-Amoako alleges in his Complaint that Delta's "flawed
computer system" is to blame for his alleged work deficiencies. Compl. ¶¶ 13–15. Yet he

argues the deficiencies were merely pretext for Delta's true termination motive: discrimination. *Id.* ¶ 12. There is a logical chasm here. Accepting Mr. Oduro-Amoako's claim that his work deficits are due to Delta's flawed system—and inferring they are not a result of his own deficiencies—it does not follow that Delta terminated him because of his disability. Additional factual allegations are required to bridge this gap and push Mr. Oduro-Amoako's claims into the realm of plausibility. Mr. Oduro-Amoako does not plausibly allege disability discrimination under the ADA.

2

In his EEOC charge, Mr. Oduro-Amoako listed "retaliation" as one of his grievances. *See* Def.'s Ex. A. He has not asserted a retaliation claim under the ADA here. *See generally* Compl. To the extent Mr. Oduro-Amoako's Complaint can be read as asserting a retaliation claim, *see, e.g.*, *id.* ¶ 24, and at 4, ¶ 28 (alleging discrimination when he was terminated after requesting additional bathroom breaks), the claim fails. As Delta persuasively argues, the timing of Mr. Oduro-Amoako's request for disability accommodation negates, rather than supports, his allegation: Mr. Oduro-Amoako had already been suspended on June 3, 2022, when he requested an accommodation on June 13, 2022. *Id.* ¶¶ 11, 18. An ADA retaliation claim is implausible.

There are three elements to a retaliation claim under the ADA: "(1) [the plaintiff] engaged in a statutorily protected activity, (2) . . . an adverse action was taken against him, and (3) [there is] a causal connection between the adverse action and the protected activity." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999). Requesting an accommodation qualifies as a protected activity. *Prod. Fabricators*, 763 F.3d at 972;

17

*Kirkeberg v. Canadian Pac. Ry.*, 629 F.3d 898, 907–08 (8th Cir. 2010).  While temporal proximity between the protected activity and the adverse action may suggest retaliation when close enough in time, *Anderson v. KAR Glob.*, 78 F.4th 1031, 1037 (8th Cir. 2023), when the evidence shows that there has been concern about an employee before the employee's engaging in the protected activity, such ordering of events "undercuts the significance of temporal proximity," *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) (citation omitted).

Delta suspended Mr. Oduro-Amoako "pending investigation, for alleged 'work avoidance' related to alleged abuse of time and high internal call wait times" ten days before Mr. Oduro-Amoako's request for disability accommodation on June 13, 2022. Compl. ¶¶ 11, 18.  This demonstrates Delta was concerned about Mr. Oduro-Amoako's workplace behavior *before* his accommodation request, and Mr. Oduro-Amoako has not provided any additional factual allegations that tend to support the claim that he was subjected to disability retaliation.

## C

Consider Mr. Oduro-Amoako's race-, sex-, and sexual-orientation-discrimination claims together.[7]  In Counts Two and Three of his Complaint, Mr. Oduro-Amoako claims

---

[7]     Mr. Oduro-Amoako also appears to present an argument based on "sex-plus" discrimination in his brief.  *See* Pl.'s Mem. in Opp'n at 23.  Sex-plus discrimination is sex discrimination based on sex and another characteristic.  *Knott v. Mo. Pac. R.R. Co.*, 527 F.2d 1249, 1250–51 (8th Cir. 1975); *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1045–46 (10th Cir. 2020); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009).  The second characteristic may be either protected or seemingly neutral. *Frappied*, 966 F.3d at 1045–46.  Sex-plus discrimination occurs when not all men or women are discriminated against, but a subclass of men or women are discriminated

Delta terminated his employment on the basis of his race, sex, and sexual orientation in violation of Title VII.  42 U.S.C. § 2000e-2(a)(1).  Because he fails to provide allegations sufficient to plausibly show either direct evidence or an inference of discrimination in the decision to terminate his employment, Mr. Oduro-Amoako's Title VII claims will be dismissed.

The applicable Title VII analysis depends on whether there was "direct evidence" of discrimination.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting the *McDonnell Douglas* burden-shifting framework does not apply "if a plaintiff is able to produce direct evidence of discrimination").  Direct evidence is "evidence of conduct or statements by persons involved in the decisionmaking process that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision."  *Kerns v. Cap. Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999).  But "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" are not direct evidence.  *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (citations omitted).

Mr. Oduro-Amoako points to a manager's comments as direct evidence of discrimination.  Pl.'s Mem. in Opp'n at 23–25 (citing Compl. ¶¶ 19, 21, 26).  Pertaining to

---

against, with the subclass being defined by their sex in addition to one other characteristic. *Chadwick*, 561 F.3d at 43.  Mr. Oduro-Amoako's sex-plus discrimination argument does not alter the analysis here because the same legal principles apply to sex discrimination claims and sex-plus discrimination claims, *Frappied*, 966 F.3d at 1050–51, and Mr. Oduro-Amoako has failed to identify the second characteristic on which he basis his sex-plus discrimination claim.  *See* Pl.'s Mem. in Opp'n at 22–25.

race, Mr. Oduro-Amoako alleges that on February 27, 2022, a manager "asked [him] 'if all black people do not know how to swim' and if them 'not being able to swim was related to the color of their skin.'"[8]  Compl. ¶ 30.  Pertaining to sex and sexual orientation, Mr. Oduro-Amoako alleges that "immediately after [his] suspension" the manager "made veiled comments about Plaintiff's involvement and affiliation with Delta's BRG Equal LGBT group, even though Plaintiff is a heterosexual male."  *Id.* ¶¶ 26, 30.  Mr. Oduro-Amoako also alleges that when he was escorted to his car by law enforcement after his suspension, the manager stated that the location of his parked car "'was particularly alarming' and raised serious concerns about [Mr. Oduro-Amoako]."  *Id.* ¶ 27.

These comments, though quite inappropriate and offensive, do not suffice as direct evidence of discrimination on the basis of race, sex, or sexual orientation.  The Complaint does not allege that the manager who made the remarks is a decisionmaker or that she had any part in deciding to terminate Mr. Oduro-Amoako's employment.  "In the context of employment termination, when discriminatory comments are 'vague and remote in time and administrative hierarchy, they are not more than 'stray remarks,' which are insufficient to establish discrimination.'"  *Smith v. DataCard Corp.*, 9 F. Supp. 2d 1067, 1079 (quoting *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir.1991)).

The allegation of a "veiled comment" about Mr. Oduro-Amoako's involvement in LGBTQ advocacy groups is devoid of context, and does not provide more than

---

[8]     Mr. Oduro-Amoako also alleges the manager made remarks about West Africans.  *See* Compl. ¶¶ 26, 30.  Because the comments relate to Mr. Oduro-Amoako's national origin, not race, they are not considered in the analysis here.

Mr. Oduro-Amoako's own conclusion that the comment was discriminatory. The court need not accept his conclusion. *Iqbal*, 556 U.S. at 678. But even assuming the "veiled comment" was an offensive remark, both it and the comment about whether Black people can swim cannot plausibly be considered anything other than "stray" remarks given Mr. Oduro-Amoako's factual allegations. *See Twymon*, F.3d at 930–32, 934 (holding that comments made on several occasions by two individuals involved in the decision to terminate the plaintiff's employment were only stray remarks). In *Smith v. DataCard Corp.*, an African-American plaintiff alleged her supervisor described her termination meeting as a "lynching meeting," and named similarly situated white employees who were treated differently. *Smith*, 9 F. Supp. 2d at 1079. The court found that, though the comments Smith faced were "repugnant and inappropriate," they were insufficient to support her discrimination claims because they were "sporadic" and "came from individuals who were not 'decisionmakers'" in Smith's termination. *Id.* The same is true here; the comments Mr. Oduro-Amoako faced were inappropriate, but were apparently sporadic, not made by a decisionmaker, and do not support his discrimination claims. Further, the comment about where Mr. Oduro-Amoako had parked his car has no apparent connection to his race, sex, or sexual orientation and thus does not provide evidence of discrimination. *See Twymon*, 462 F.3d at 934.

Without direct evidence of discrimination, disparate-treatment claims under Title VII are ordinarily analyzed under the burden-shifting framework established in *McDonnell Douglas*. *Doucette v. Morrison Cnty.*, 763 F.3d 978, 982 (8th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*,

Mr. Oduro-Amoako must show that: (1) he is a member of a protected group; (2) he is qualified for his former position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802.[9]

Mr. Oduro-Amoako plausibly alleges he meets the first three criteria of the *McDonnell Douglas* framework: (1) he is a member of a protected group based on his race, sex, and sexual orientation, *see* 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020); (2) Delta does not dispute his qualification, *see generally* Def.'s Mem. in Supp; Def.'s Reply Mem; and (3) termination is an adverse employment action, *see Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011). But Mr. Oduro-Amoako fails to provide factual allegations that would render the fourth criterion plausible.

The only allegation that would support Mr. Oduro-Amoako's sexual-orientation claim is that the manager made "veiled comments" about his participation in LGBTQ advocacy groups. Compl. ¶¶ 26, 30, 37. Mr. Oduro-Amoako does not allege that other similarly situated employees of different *sexual orientations* were treated more favorably than him. *See id.* ¶ 14 (alleging Mr. Oduro-Amoako "was the only black, West African,

---

[9]     The plaintiff need not plead facts establishing a prima facie case to survive a Rule 12(b)(6) motion in a Title VII case, because the prima facie case is an evidentiary standard, not a pleading requirement. *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz*, 534 U.S. at 511). However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit. Instead, such elements are part of the background against which a plausibility determination should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (cleaned up). The elements may be used as a "prism to shed light upon the plausibility of the claim." *Id.* (citation omitted).

disabled, male [Customer Experience Specialist] suspended and then terminated"); *id.*

¶¶ 31–33 (claiming employees of different *races* and *national origins* who were not *male*

and not *disabled* were treated more favorably).  This single comment made by someone

who is not alleged to be a decisionmaker is insufficient to plausibly allege that his

termination was a result of sexual orientation discrimination.  Mr. Oduro-Amoako's claim

of sexual orientation discrimination fails.

D

As for Mr. Oduro-Amoako's remaining state-law claims under the MHRA, a

district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the

district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.

§ 1367(c)(3).  Courts may decline to exercise supplemental jurisdiction sua sponte.  *Ramlet*

*v. E.F. Johnson Co.*, 464 F. Supp. 2d 854, 864 (D. Minn. 2006), *aff'd*, 507 F.3d 1149 (8th

Cir. 2007).  "[I]n the usual case in which all federal-law claims are eliminated before trial,

the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

economy, convenience, fairness, and comity—will point toward declining to exercise

jurisdiction over the remaining state-law claims."  *Barstad v. Murray Cnty.*, 420 F.3d 880,

888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)).  And the Eighth Circuit has instructed district courts not to exercise supplemental

jurisdiction over state-law claims when, as here, all federal claims are dismissed well

before trial.  *See Cnty. of Koochiching*, 527 F.3d at 726–27.  There is no reason to deviate

from this general rule here, where the case is in its earliest stages and all that remains are

state-law claims.

\*

Lastly, in his motion-to-dismiss briefing, Mr. Oduro-Amoako requests leave to amend if this Court "deems that any portion of [his Complaint] fails to plead sufficient facts to support his claims." Pl.'s Mem. in Opp'n at 31. This request will not be granted as part of this order. Mr. Oduro-Amoako did not describe his proposed amendments, nor did he file a proposed amended pleading as required by D. Minn. LR 15.1(b) (requiring a motion to amend along with "(1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows . . . how the proposed amended pleading differs from the operative pleading."). A "[p]laintiff's pro se status does not excuse him from following . . . [the] Local Rules of this Court." *Oprenchak v. Am. Fam. Mut. Ins.*, No. 11-cv-425 (PJS/TNL), 2012 WL 1247216, at *15 (D. Minn. Mar. 26, 2012), *report and recommendation adopted*, 2012 WL 1253011 (D. Minn. Apr. 13, 2012) (citing *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002)). Mr. Oduro-Amoako has not complied with the Local Rule, and it is not feasible to determine the propriety of any proposed amendments without first reviewing them.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 9] is **GRANTED**.

2.   All Title VII and Americans with Disabilities Act claims are **DISMISSED with prejudice**.

3.      All Minnesota Human Rights Act claims are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 26, 2024                          s/ Eric C. Tostrud
                                               Eric C. Tostrud
                                               United States District Court